UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN DORF,

    Plaintiff,

  v.

STANDARD INSURANCE COMPANY,
as successor to MINNESOTA LIFE
INSURANCE COMPANY,

    Defendant.

No. 13 CV 6479

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen Dorf worked as a trader in the soybean-oil pit until pain in his neck rendered him unable to use a wearable computer he considered essential to the job. Not able to work, plaintiff sought benefits from his disability insurer, defendant Standard Insurance Company, who in turn denied the claim because it believed that specific computer was not essential. This action for breach of contract ensued.

Defendant has moved for summary judgment under Federal Rule of Civil Procedure 56(a). For the following reasons, although plaintiff has adequately raised material factual disputes in response to several of defendant's arguments, he has failed to dispute a critical aspect of the disability determination, and therefore, defendant's motion is granted.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

Plaintiff Stephen Dorf has traded various products in the Chicago Board of Trade's financial open-outcry pits since 1979. In 2001, plaintiff started simultaneously trading in-person and electronically with the help of a computer affixed to a nearby railing. Plaintiff left the financial pits in 2004 and—after trading corn for a few months—eventually found a new home in the soybean-oil pit.

Plaintiff's new pit did not initially allow for computer-based trading, but that changed in 2007. Plaintiff thus returned to his old practice of simultaneously trading both the electronic and open-outcry versions of the soybean-oil market. In plaintiff's opinion, this approach increased liquidity and allowed for arbitrage opportunities that were not otherwise available.

The computer that plaintiff and other traders used in the soybean-oil pit consisted of a tablet attached to a harness. The harness went around plaintiff's neck

and the tablet rested at his stomach. This allowed plaintiff to signal trades freely with both hands.[1] Plaintiff operated the computer by touching its screen with a stylus. The computer, which ran software called "Cunningham," would typically display eight to 12 boxes containing—among other things—oil futures for multiple months, the "spreads" between them, bidding and offering information, plaintiff's open positions, and information on filled orders. Plaintiff could also use the computer to execute a variety of order types. Evidence suggests that on a typical day, a trader looked down at his screen for 80% or more of the three-hour-and-45-minute session.

\* \* \*

In February 2012, plaintiff began experiencing pain in his neck, back, and arm. These symptoms severely reduced his ability to work on his tablet because he could not look down at the screen. Consequently, plaintiff stopped working on April 30, 2012.

Plaintiff was insured under a disability income policy issued by Minnesota Mutual Life Insurance Company and administered by defendant Standard Insurance Company (the successor to Minnesota Mutual). On August 2, 2012, plaintiff submitted a claim to defendant for payment of disability benefits under the policy. Plaintiff originally attributed his debilitating pain to a golf-cart accident of January 2012, but he later said it was the result of a weight-lifting accident that

---

[1] Plaintiff testified that—while he was trading soybean oil—the pit lacked any railings to clamp a computer onto, and traders were not permitted to use other kinds of computer stands.

took place a couple weeks later. Around this time, plaintiff was also diagnosed with age-related degeneration of the spine.

Standard reviewed plaintiff's claim and denied it on the ground that wearing the computer was not a substantial and material duty of his job. After defendant refused to reverse its denial, plaintiff brought this lawsuit for breach of contract. Jurisdiction arises under 28 U.S.C. § 1332(a)—plaintiff is a citizen of Illinois, while defendant is an Oregon corporation with its principal place of business in Portland, Oregon.

Defendant has moved under Federal Rule of Civil Procedure 56(a) for summary judgment.

### III. Analysis

The insurance policy at issue required defendant to pay plaintiff only if he suffered (for at least 90 days) a "sickness or injury" that made him unable to perform the "substantial and material duties" of his "occupation or profession," including his "professionally recognized speciality." *See* [40-1] at 3, 9–10, 12. Plaintiff's duties were substantial and material if they "account[ed] for a major portion of [his] income," and he would be deemed unable to perform them only if his sickness or injury stopped him from earning more than 50% of his "prior average earned income." *Id*. at 9–10. In determining whether defendant breached this policy, the Seventh Circuit has instructed that one must consider plaintiff's job and

4

duties as of the time he became sick or injured. *Winter v. Minnesota Mutual Life Insurance Co.*, 199 F.3d 399, 401 (7th Cir. 1999).[2]

Defendant says a trial is unnecessary because the undisputed record shows plaintiff did not meet the above requirements for benefits. Defendant first contends that plaintiff was not disabled under the policy because wearing a computer on a harness was not a substantial and material duty of plaintiff's occupation, profession, or professionally recognized speciality. Defendant says plaintiff's substantial and material duties were, instead, to analyze markets and execute trades. This interpretation, however, is based on defendant and its experts generally characterizing plaintiff as a "floor trader." Plaintiff, by contrast, presented evidence that he was a floor trader with a professionally recognized speciality of identifying spreads and arbitrage opportunities based on price differences between the open-outcry and electronic soybean-oil markets. *See* [56] ¶¶ 6–7. Plaintiff also presented evidence that the substantial and material duties of such a floor trader included the specific requirement of executing electronic trades from within the pit based on proprietary software and a multitude of data. *See id.* ¶¶ 7, 12, 17. Finally, plaintiff set forth evidence from which a jury could reasonably conclude that no reasonable alternative existed to using a wearable computer as plaintiff did. *See id.* ¶¶ 8–10, 12–18. Accordingly, there are genuine issues of fact about both the nature

---

[2] For this reason, whether soybean-oil pit trading is *now* obsolete is irrelevant to the question of defendant's liability to plaintiff, and thus defendant's argument to that effect, *see* [45] at 17–18, misses the mark.

5

of plaintiff's substantial and material duties, as well as about whether plaintiff's disability necessarily limited his ability to fulfill them.

Defendant next argues that the undisputed record shows plaintiff's disability was due to a sickness and not an injury. The distinction is significant—benefits for a sickness are payable until the insured turns 65, but benefits for an injury are payable for the rest of the insured's life. [40-1] at 4. The policy defines injury as an "accidental bodily injury you sustained while this policy is in force," and it defines sickness as a "disease or illness which is treated or diagnosed while this policy is in force." *Id*. at 6, 9. Defendant says the "medical experts . . . unanimously agree that Dorf's pain symptoms are caused by age-related degeneration of his spine." [45] at 18. But plaintiff's medical expert stated in his report of November 20, 2014, that "the causative factor of [plaintiff's] cervical radiculopathy was working out at his local gym performing strength training in February 2012." [40-25] at 3. The doctor based this opinion on (1) "the temporal relationship of the working out and the beginning of the scapular and upper arm [pain]," (2) "the presence of a firm diagnosis . . . [of] a C5 cervical radiculopathy due to foraminal stenosis," and (3) the fact that "exacerbation of cervical radiculopathy can occur with weight training in the presence of previously existing, but asymptomatic, degenerative disc disease." *Id*.

Defendant says this last point actually proves that plaintiff's condition was due to a sickness, because exacerbation of a pre-existing condition cannot constitute an injury. Defendant relies on *Levy v. Minnesota* for the proposition that, under the

6

policy's relevant language, a disability's immediate cause—not its proximate cause or the "cause of the cause"—dictates the category into which it falls. *See* 2006 WL 3542236 (N.D. Ill. Dec. 4, 2006), *aff'd* 517 F.3d 519 (7th Cir. 2008). But that interpretation of the policy actually cuts against defendant in this case, since the evidence is that plaintiff's degenerative spine disease was asymptomatic until plaintiff had his weight-lifting accident. In other words, the immediate cause of the pain was the gym incident, while the "cause of the cause" was the foraminal stenosis. A dispute of fact therefore exists about the cause of plaintiff's debilitating pain, and summary judgment is unwarranted on this issue as well.

Finally, defendant argues that plaintiff failed to carry his burden of production at this summary judgment stage by failing to respond with any evidence that his disability persisted for at least 90 days, or that his disability prevented him from earning more than 50% of his "prior average earned income." *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, the nonmoving party bears the burden of production under Rule 56 to designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted).

Plaintiff did not respond to either argument, but the record reveals a dispute of fact about whether plaintiff was still disabled outside the 90-day waiting period. The report of plaintiff's first medical visit following his gym incident suggests the injury happened on February 15, 2012, *see* [40-21] at 3, which means the waiting period ended on May 15, 2012. In plaintiff's Functional Capacity Evaluation, which

7

took place May 16–17, 2012, he was found to be not capable of keeping his neck bent in the manner required to use his computer. *See* [40-13] at 4–6. That is enough to create a genuine dispute of fact.

Plaintiff's failure to respond proves to be more damaging, however, on the issue of his decreased compensation. Neither plaintiff's response to defendant's Statement of Facts nor his Statement of Additional Facts contains any admissible evidence that puts into dispute the amount of compensation he lost by not being able to use his harness-based computer. Plaintiff gets the closest with the testimony of a fellow pit trader, David Diamond, about this "one guy" who is "not there anymore" because he was "losing money" not using the tablet. *See* [56] ¶ 15. But that vague proof lacks sufficient foundation to be admissible and otherwise fails to create a genuine dispute over plaintiff's ability to earn more than 50% of his prior average earned income. While plaintiff stopped working in the pits on April 30, 2012 (presumably earning no income from his regular occupation thereafter), he submitted no evidence about his income level between February and April 2012, and no evidence about his ability to earn more than 50% of his past income.

Plaintiff asserts in passing that:

[I]f [plaintiff's] inability to use his tablet causes even a small reduction in his ability to effectively [analyze markets and execute trades] and results in *a loss of income*, he has met his burden for establishing disability.

[50] at 17 (emphasis added). Plaintiff also argues that:

While other inferior methods of floor trading may exist, the use of the tablet . . . has become so ubiquitous and offers such an advantage over every other means of performing the occupation that it must be concluded that traders such as [plaintiff] require the use of a tablet

> and harness in order to maintain *an acceptable level of productivity and profitability*.

*Id*. at 5 (emphasis added). These two points by plaintiff reveal his misunderstanding of the standard controlling this case. On this issue the policy is explicit:

> The purpose of this policy is to partially replace earnings lost as the result of your disability. *If you earn from your regular occupation more than 50% of your prior earned income you will not be considered disabled* for the purposes of this policy. . . .

[40-1] at 10 (emphasis added).

The 50% threshold is referenced twice (albeit in slightly different ways) in the policy: first in defining the substantial and material duties of the regular occupation, and later in the factors to be considered in determining disability. This unmistakably told the plaintiff that only if he could not earn more than 50% of his income from his regular occupation would he be considered disabled. To survive summary judgment, a non-moving plaintiff must present evidence from which a jury could reasonably find for him for each element of his case. *See Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Plaintiff failed to set forth admissible evidence about his compensation or earning capacity in his regular occupation tied to the 50% threshold, and therefore failed to demonstrate a triable issue of fact as to whether he was disabled under the policy. Summary judgment is therefore appropriate.

## IV. Conclusion

Defendant's motion for summary judgment [39] is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 8/26/15