**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STEPHEN DORF,

      Plaintiff,

      v.

STANDARD INSURANCE COMPANY,
as successor to MINNESOTA LIFE
INSURANCE COMPANY,

      Defendant.

No. 13 CV 6479

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen Dorf worked as a commodities trader in the soybean-oil pit of the Chicago Mercantile Exchange, using a tablet computer to trade simultaneously in both the open outcry and electronic markets. When pain in his neck rendered him unable to work a full trading day, he sought disability benefits from his insurer, defendant Standard Insurance Company. Dorf brought this action after Standard denied his claim, and judgment was entered in Standard's favor after a two-day bench trial. [82].[1] Dorf moves for additional findings and amended judgment pursuant to Rules 52(b) and 59(e).

## I. Legal Standard

Rule 52(b) provides that a court, upon a motion of a party, may amend its findings or make additional findings and may amend the judgment accordingly. Fed. R. Civ. P. 52(b). "The primary purpose of Rule 52(b) is to enable the appellate

---

[1] Bracketed numbers refer to entries on the district court docket.

court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and the judgment entered thereon." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2582 (2016). Upon a Rule 59(e) motion, a court may alter or amend a judgment. Fed. R. Civ. P. 59(e). The rule "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Both types of motions "are intended to correct manifest errors of law or fact or to present newly-discovered evidence." *U.S. ex rel. Russo v. Attorney Gen. of Ill.*, 780 F.2d 712, 716 n.4 (7th Cir. 1986). But they are not appropriately used to relitigate the case using evidence or arguments that were available before judgment was entered. *Id. See also Moro*, 91 F.3d at 876; *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Rule 59(e) decisions are entrusted to the district court's sound judgment. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

## II.    Background

The findings of fact and conclusions of law in this case were set forth in an oral ruling on February 17, 2016, after a two-day bench trial. [81]; *see also* [85]. The following summarizes but does not replace those findings and conclusions.

Plaintiff Stephen Dorf had an insurance policy with defendant Standard Insurance Company. The policy required that Standard pay Dorf a monthly benefit if he were continuously disabled for more than 90 days and under the regular care of a physician for the disabling condition. Dorf would be considered "disabled" if,

due to sickness or injury, he could not perform the substantial and material duties of his regular occupation, or those duties which account for a major portion of his income, and he were unable to earn more than 50% of his prior income.

Dorf stopped working and claimed disability under the policy on April 30, 2012, due to pain related to his spinal stenosis. At that time, he worked as a commodities trader, primarily in the trading pits of the Chicago Mercantile Exchange. Dorf was a skilled trader who identified and tracked market trends, and made trades exploiting arbitrage opportunities between electronic and open outcry markets, using a tablet computer secured to his body by a harness. In general, his methodology consisted of monitoring both the open outcry and the electronic markets, spotting an opportunity for arbitrage between the two, and then making near-simultaneous trades in both markets. He generated his income trade by trade, and he did not need to remain in the pit for every minute of the trading day to earn income. I also found that Dorf's use of a tablet and harness was a necessary component to his trading strategy, and hence, a substantial and material duty of his occupation to some degree. Because the contract tied its definition of disability to income generation, and Dorf's income was earned trade by trade, it was necessary for Dorf to prove that he could not use his tablet and harness to the degree necessary to make enough profitable trades to earn more than half his income.

Dorf failed to prove that he could not earn more than 50% of his income by wearing his tablet harness for the reduced amount of time that he was capable of wearing it. One of his expert witnesses, a physical therapist who evaluated his

functional capacity in mid-May, testified that Dorf could remain in the stooped position required to use his tablet for up to roughly two hours and thirty-eight minutes. Other expert witnesses testified that Dorf's pain could fluctuate, and Dorf admitted that it had already subsided to some extent by mid-May. Dorf did not see a doctor for his pain after May, and he could not prove that he experienced a sustained level of pain such that he could not perform the substantial and material duties of his job for the requisite 90-day period of May 1 through August 1, 2012. I found it likely that working for two hours and thirty-eight minutes out of the three-hour-and-forty-five-minute trading day would generate greater than 50% of his prior income. Accordingly, judgment was entered against him.

## III. Analysis

### A. Additional Findings of Fact

Rule 52(a) requires that a district court set out its findings of fact, and that requirement is satisfied if the findings "are sufficiently comprehensive to disclose the steps by which the trial court reached its ultimate conclusion on factual issues." *Bartsh v. Nw. Airlines, Inc.*, 831 F.2d 1297, 1304 (7th Cir. 1987). Dorf does not contest any of the February 17 oral ruling's findings of fact, but argues that three additional findings, each related to the duties of a commodities trader in April 2012, are necessary to fill in significant gaps in the oral ruling's reasoning and correct manifest errors of fact and law contained in that ruling. The proposed additional findings are: 1) a trader did not derive income in a linear manner, but from profit opportunities that arose sporadically and unpredictably throughout the trading day;

2) a trader could not predict when a profit opportunity would arise, and needed to be in the trading pit in order to immediately identify and exploit that opportunity; and 3) a trader only had a fraction of a second to identify and execute a profitable trade. He claims that these findings relate to critical issues that serve as the basis for the judgment, and are consistent with previous findings and with the evidence on the record.[2]

Dorf argues that the proposed findings factor heavily into the reasoning underlying the decision reached in the oral ruling. Central to his argument is the premise that, in the oral ruling, I concluded that Dorf could have earned at least 50% of his prior earnings by using his tablet for two hours per trading day, and that my conclusion was based on an implied finding that profitable trading opportunities are generally present throughout the course of a trading day. This misstates the oral ruling's reasoning and seems to misinterpret both my conclusion and the parties' relative burdens of proof. I did not find that profit opportunities were present throughout the trading day, and such a finding is unnecessary to support the conclusion that Dorf failed to carry his burden to prove that he could not have earned more than 50% of his prior earnings. A finding that profit opportunities are not generally present throughout the day, without more, does not help Dorf carry his burden. I found that Dorf could have spent roughly two hours and thirty-eight

---

[2] Dorf also argues that the proposed findings should be adopted because Dorf's testimony was corroborated by two witnesses who used to work alongside him. Standard notes that the two witnesses' opinion testimony on these matters was ruled inadmissible, because they had not been disclosed as expert witnesses. *See* [83] at 10–11, Tr. at 10:21–11:1. Dorf waives any argument to the contrary by failing to address this issue. In any event, corroboration of a proposed finding is not a reason for a court to make a finding that would otherwise be unnecessary to reach in support of a judgment or legal conclusion.

minutes per trading day using his tablet in the trading pit, and Dorf did not provide, and still does not provide, sufficient evidence to show that he could not have earned greater than 50% of his prior earnings in that time. The oral ruling satisfied Rule 52(a) because it provided all of the facts necessary to support the judgment. Dorf does not contest any of the oral ruling's factual findings, and the proposed findings do not fill in any gaps in its reasoning. But to the extent that the findings may clarify the oral ruling for a reviewing court and are consistent with the evidence, they will be considered.

Dorf claims that the proposed findings of fact are consistent with previous findings and with the evidence in the record. But that is not so. The first proposed finding that a trader derived income from profit opportunities that arose unpredictably throughout the day conflicts with my finding that Dorf was a skilled trader who studied and tracked the market. It also conflicts with Dorf's testimony, referenced in his briefing, that he could predict higher trading volume at certain times of the day or month. It is true that Dorf did not earn income on an hourly basis, and that the market and the timing of Dorf's profit opportunities could be influenced by certain unpredictable events, and I will make those limited findings.[3] But I reiterate my finding that trading time need not be continuous to generate income. As a result, it is reasonable to infer that Dorf, as a skilled trader and student of the market, could spend less time trading and earn a reduced amount of income.

---

[3] As explained in the February 17 oral ruling, how much influence any event or other factor had on Dorf's income is unknown on the record.

Dorf's second proposed finding—that a trader could not predict when profit opportunities would arise, and needed to be in the pit to identify and exploit them— is overbroad. It is reasonable to infer that the timing of any particular trade could not have been predicted with precision, but not that profit opportunities were wholly unpredictable. However, I will make the limited finding, consistent with the oral ruling, that identifying and acting on an arbitrage opportunity between the open outcry and electronic markets required a trader's physical presence in the pit. But plaintiff failed to prove that continuous presence, in a stooped position, for a full trading day was necessary to hit the 50% of income threshold required to prove disability.

The third proposed finding is consistent with Dorf's testimony, but I do not credit that testimony that he executed trades on his tablet within milliseconds of identifying a profit opportunity. I will make the limited finding, consistent with the evidence and the oral ruling, that a trader had to execute trades and exploit profit opportunities immediately upon identifying them.

The February 17 oral ruling will be amended to include the limited findings of fact described above.

### B.    Amended Judgment

Dorf contends that, based upon the proposed findings of fact, an amended judgment in his favor is warranted. The limited findings described above do not necessitate reversing the judgment. But even adopting Dorf's proposed findings in full would not result in a reversal. Assuming the profit opportunities were sporadic

and unpredictable and unevenly distributed, it may still be possible to capture the majority of those opportunities over time by trading in the pit for the majority of each trading day (up to his capacity of two hours and thirty-eight minutes), and in doing so, earn greater than 50% of his prior income. Plaintiff did not prove that this would be impossible (or even unlikely), and the burden of proof was on Dorf. Because he did not provide any evidence showing the connection (or lack thereof) between his income and trading activity, trading volume, market forces, or other factors, he cannot show by a preponderance of the evidence that he was unable to earn more than 50% of his prior income, even if his proposed findings were adopted in full.

Acknowledging this lack of evidence, Dorf argues that his job must be treated as a unitary whole, and that any reduction of time spent on the trading floor should be treated as a complete loss of income. He also argues that missing a trading opportunity could result in losing all of the income earned that day or even over the course of the preceding months. But Dorf presented no evidence or analysis to support these arguments, though he had the opportunity to do so, and he does not contest the finding that he generally laid off his open outcry trades on the electronic market immediately. He instead compares his income to that of an attorney earning a contingency fee, which cannot be broken down to reflect accurately how much should be attributed to each of the attorney's individual actions. But Dorf does not cite to anything in the record to prove that impossibility, and he ignores my finding,

which he does not contest, that he generated income trade by trade, rather than all at one time.

Sidestepping the policy's income requirement, Dorf claims that he proved disability based on the holdings of *McFarland v. General American Life Insurance Co.*, 149 F.3d 583 (7th Cir. 1998) and *Rahman v. Paul Revere Life Insurance Co.*, 684 F.Supp. 192 (N.D. Ill. 1988). Neither case involves a policy with a similar income requirement, so they are inapplicable. Moreover, unlike occupations where the inability to perform some tasks would materially change the entire occupation, here, Dorf's limitation was one of duration, not occupational characteristic. He could still trade on the floor, spot opportunity, study markets, use his tablet and harness for two hours and thirty-eight minutes, and trade at home. Whether his limited ability to trade full-time meant he was unable to earn more than 50% of his income was at issue here, and he failed to prove his contention.

At trial, Dorf failed to prove that he was continuously disabled under the policy, and judgment was entered against him. I conclude that no manifest errors of law or fact would require reversing that judgment.[4]

IV.    **Conclusion**

Dorf's motion for additional findings and amended judgment, [86], is granted in part. The February 17 oral ruling is modified to include certain additional findings set forth in this opinion. The judgment, [82], remains in favor of Standard.

---

[4] Dorf also requests a determination that he satisfied the policy's separate requirement that he be under the regular care of a physician. I decline to make any additional findings on this issue, *see* [85] at 12, Tr. at 377:2–4, because Dorf failed to prove the threshold issue of continuous disability.

Dorf's objections to Standard's bill of costs are due 8/12/16. Standard's responses to

Dorf's objections are due 8/26/16.

ENTER:

Manish S. Shah
United States District Judge

Date:  7/15/2016